### County of Hillsborough *v.* Londonderry.

The four years required by statute to gain a settlement by the possession of property and the payment of taxes, need not be political or calendar years. The ownership and residence must have continued together for four years in succession, but these may commence at any season of the year and terminate at the end of four years from that time.

After a tax against A. has been duly assessed by the selectmen of a town, and committed to the collector of taxes for collection and he has notified A. of the amount of his tax, A. has a right to pay the same at any time before it is abated. And if, before such abatement, A. tenders to the collector the full amount of such tax, such tender will be equivalent to a payment of the tax, for the purpose of gaining a settlement in such town.

An abatement of a tax must be the act of a majority of the selectmen, acting in their official capacity, and must be a matter of record.

It appeared that one Parker G. Melvin, then residing in Litchfield, was committed to the Insane Asylum, in Concord, on the 16th day of July, 1859, by an order from the judge of probate for the county of Hillsborough, and that he had since remained there. Plaintiff had paid the charges for his board, &c., at the Asylum, amounting to $400.09, and brought this suit to recover the same of the defendant.

The defence was that the said Melvin's legal settlement was in Litchfield, and not in Londonderry.

Said Melvin was twenty-one years of age, August 13, 1858, and was then emancipated, but he had only the settlement which he derived from his father, Gilman Melvin. Said Gilman Melvin gained a settlement in Londonderry prior to the year 1845, and the only question was, whether he had since gained a settlement in Litchfield, prior to the time when his son Parker G. became of age.

Gilman Melvin moved to Litchfield in 1851, and in 1853, September 6, he purchased a small farm there, on which he lived with his family until his son, Parker G., became of age, and has since lived; which farm, during the years 1854 to 1858 inclusive, was owned by said Gilman Melvin, was not encumbered, and was during all that time, of the value of $150 and more.

In September, 1857, said Parker G. was sent to the Insane Asylum at Concord, by an order from the judge of probate, where he remained until the spring or early summer of 1858, when he was discharged, and returned home and lived with his father till he became of age. The ev-

idence tended to show that the selectmen of Litchfield made the application to have him removed to the Asylum, in 1857, at the request of his father, said Gilman Melvin, and the evidence tended to show that said town of Litchfield paid the expense of said Parker G. at the Asylum, when he was there the first time in 1857–8.

In 1854, 1855 and 1856, said Gilman Melvin was taxed in Litchfield for his poll and farm, and some small amount of personal property. In 1857 he was taxed for his farm and some personal property, and in 1858 he was not taxed at all, though he owned the same farm and has continued to since.

As to whether said Gilman Melvin paid all the taxes assessed against him in the spring of 1854, or not, the evidence was conflicting. But the court instructed the jury, that it was not necessary that the four years required should begin on the first day of January, or the first day of April, of any given year; that the law fixed no particular day on which said term should commence or close, but that if they should find that for four full years in succession, prior to the 13th day of August, 1858, said Gilman Melvin, owning real estate in said Litchfield, of the value of $150, had paid all taxes legally assessed against him during said term, he would thereby gain a settlement in Litchfield, which would avail the defendant in this case; and that, too, notwithstanding his son Parker G., then a minor, was supported at the Insane Asylum, by the town of Litchfield, from September, 1857, to the spring of 1858. To which ruling the plaintiff excepted.

Plaintiff offered to prove that a school house tax was assessed upon said Gilman Melvin and his estate in February, 1859, in said Litchfield, which had never been paid, but the court excluded the testimony, and plaintiff excepted.

The evidence tended strongly to show that said Gilman Melvin paid all the taxes assessed upon him and his estate in the years 1855 and 1856. In 1857 he was taxed, and these taxes were duly committed to the collector of taxes in Litchfield for that year, for collection, and that he gave said Melvin notice in writing, of his having such tax against him, and the amount of the same; said notice being dated August 12, 1857, and was delivered to said Melvin at that time. After Parker G. Melvin was sent to the Asylum in September, 1857, the selectmen of Litchfield, or some of them, directed the collector not to receive said Gilman Melvin's taxes for that year. On the 28th day of November, 1857, the evidence tended to show that said Gilman Melvin went to the house of the collector of taxes for said Litchfield, and there tendered to the collector, in person, the full amount of all his taxes for that year, in specie, and stating for what the tender was made, which the collector refused to accept, saying to Melvin, that he (Melvin) was a pauper, and he should not receive his tax; whereupon Melvin put the money down upon the floor in the collector's house, and in his presence, and left it there and went away. Plaintiff introduced evidence tending to show that the selectmen of Litchfield abated said Melvin's tax for that year, on the 6th day of March, 1858, when they settled with the collector, previous to the annual town meeting that spring.

The court, after instructing the jury what would and what would not amount to an abatement of the taxes, to which instructions no exception was taken, further instructed the jury, that, although selectmen, after a tax had been duly assessed against a person upon any property, might, at any time before the same was paid or tendered, abate the tax for the purpose of preventing the person from gaining a settlement in the town; yet that if the full amount due for taxes that year, was tendered to the collector of Litchfield for that year by said Gilman Melvin, before the same was abated by the selectmen, that would be equivalent to a payment of the tax for that year; but if the tender was not made till after the tax was abated, then the tender would be unavailing.   To which ruling the plaintiff excepted.

There was some evidence tending to show that some presents had been made to said Melvin, or to his family, by individuals in Londonderry, in consequence of his having paid or tendered this tax; and that some of the selectmen of Londonderry had requested him to pay it; and said Gilman Melvin was inquired of whether he had not said, that he could carry the case either way, and that he would carry it in favor of the side that paid him the most?   Which he denied.   Plaintiff requested the court to instruct the jury, that, "if Melvin, in making the tender of the tax for 1857, was requested to do so by the selectmen of Londonderry, and upon the understanding that the money tendered or paid was to be refunded to him by the town of Londonderry, or anybody else in behalf of said town, then the tender or payment could not now avail defendant;" which the court declined to do, but did instruct the jury, that if any fraud was perpetrated by Londonderry or its agents, by which said Melvin had been induced or procured to pay or tender this tax, then the defendant could not now claim the benefit of such payment or tender, or avail itself of the same.

The court also instructed the jury, that, as Melvin was situated at the time, both Londonderry and Litchfield would be likely to feel an interest in what he did in regard to that tax, and that both might try to influence him, one to pay and the other not to pay this tax; and that if they found that Melvin was procured or induced by the town of Londonderry, or its agents, to act in this matter differently from what he would have acted had no inducement been held out on either side, then the tender could not avail the defendant now.   But if Melvin did, in the end, just what he desired to do in the first instance, and just what he would have done had no inducement whatever been held out to him on either side, then the tender would be good, and the defendant would be entitled to the benefit of it.   To these instructions plaintiff excepted.

Verdict for defendant; plaintiff moved for new trial; and the questions of law raised in the case were reserved.

*G. Y. Sawyer* and *G. W. Morrison*, for plaintiff.

*Bell* and *Fowler & Chandler*, for defendant.

SARGENT, J.   It appeared that the settlement of Parker G. Melvin

which was in dispute, was derived from his father, Gilman Melvin, said Parker G. having gained no settlement for himself after becoming of age. Gilman Melvin had a settlement in Londonderry prior to 1845, and the question was whether he had gained a settlement in Litchfield since that time and before said Parker G. became of age, which was on the 13th day of August, 1858. It was claimed by the defendant that such settlement was gained by the father in said Litchfield during the four years next preceding said 13th of August, 1858. It appeared that the father, from Sept. 6, 1853 to August 13, 1858, and since, owned real estate in said Litchfield of sufficient value to entitle him to a settlement there, provided he paid all taxes legally assessed upon him and his estate for four years in succession according to the fourth mode of gaining settlements provided in Chap. 65, Sec. 1, Rev. Stats.

The question as to when the four years must begin and end was settled in *Andover* v. *Merrimack Co.*, 37 N. H. 437, and the first instructions were therefore correct in this respect. Does the fact that the son, Parker G., while a minor was supported at the Insane Asylum a portion of this term of four years, prevent the father from gaining a settlement? The statute makes no such exception, but provides that whoever owns real estate of the requisite value in any town and pays all taxes, &c., for four years in succession, shall gain a settlement.

Under the statute, complaint was made to the judge of probate who ordered the said Parker G. committed to the Insane Asylum, and in such cases it is provided that such insane person shall be supported by the county from which he was committed, and any sum so paid may be recovered by the county of any county, town or person chargeable with his support. Rev. Stats. Chap. 9, Secs. 11 & 15. The expenses sought to be recovered in this suit have all accrued since said Parker G. became of age, but the case states that the evidence tended to show that the expenses of his first confinement in the Asylum while a minor were paid by the town of Litchfield. For aught that appears in the case, these expenses may have been voluntarily paid by that town, without making any claim upon the father of the minor to repay them. It does not necessarily follow that the father was a pauper because the town voluntarily paid these expenses. In fact it was settled in *Litchfield* v. *Londonderry*, 39 N. H. 247, in which it seems that the town of Litchfield sought to recover these identical expenses of the son in the Asylum while a minor, of the town of Londonderry, that the father, Gilman Melvin had the ability to pay these expenses at the time, and therefore was not a pauper.

We think that the mere fact, as shown by the town of Litchfield, that they paid these expenses without showing or offering to show something further, was entirely immaterial, and that the jury were properly told that they might disregard that circumstance and decide the case upon the other circumstances and proofs submitted to them.

So, the ruling in regard to the school house tax, assessed in Feb. 1859, was correct, because this assessment was made after the expiration of the four years during which it was claimed that Gilman Melvin gained a residence in Litchfield, and which terminated August 13, 1858.

The jury have found that the taxes of 1855 and 1856 were paid, and there was no evidence that any were assessed in 1854 after August 13th ; none were assessed in 1858. In 1857, after the tax against Melvin had been duly assessed with the other taxes of that year, had been inserted in the collector's warrant, and duly committed to the collector for collection, and he had notified Melvin of the amount of the tax against him, Melvin had the right to pay the same at any time before it was abated. And when the money was offered, the collector had no right to refuse to take it. While the tax stood against Melvin unabated he had the right to pay it when he pleased, provided he paid it seasonably, otherwise the collector might enforce the collection.

Nor could any verbal directions of the selectmen or any of them justify him in refusing to receive it. He had their official order and warrant in writing, directing him to collect this tax. This was his only legal authority on that subject, until the tax should be legally abated and he properly notified of that fact. And as the assessment of the tax was a matter of record so should the abatement be an act of the selectmen acting in their official capacity, and the same should be a matter of record.

Where a man owes a sum of money which he has a right forthwith to pay, he may tender the same, and if he keeps his tender good, and the same be refused, it operates as a payment. In this case the money was not only tendered to the man whose duty it was to receive it, but the amount tendered was left in his house and has never come to the use of Melvin since. It was where the collector might have used it if he would. What occurred between Melvin and the collector was clearly sufficient to have made the collector chargeable to the town for this money if the selectmen had not subsequently abated it. But an abatement of the tax after it is legally paid cannot avail to deprive a man of a settlement which depends solely upon that act of payment. We think the tender must be held equivalent to a payment both for the purpose of charging the collector with the money, and of enabling Melvin to acquire a settlement by the payment of that tax, and that the ruling on that point was correct.

The instructions given to the jury were as a whole sufficiently favorable to the plaintiff, and though not given in the terms in which they were asked, yet perhaps they were even more favorable to the plaintiff. Under the instructions as given, the jury must have found first that there was no fraud on the part of Londonderry or its agents, in procuring or inducing Melvin to pay the tax, and further that said town or its agents did nothing to induce or procure Melvin to act in this matter differently from what he would have acted if no inducements had been held out to him on either side.

All fraud on the part of Londonderry being negatived the jury must have found either that no efforts were made to influence Melvin to pay the tax on either side, and no inducements offered by either, or if there were, then that Londonderry only used such fair means as they might properly do, to offset and neutralize the efforts made on the other side and thus leave Melvin's mind free to choose just as he would have done

had he been left entirely to himself. We think the plaintiff cannot complain of these instructions.

*Judgment on the verdict.*